UNITED STATES *v.* PACIFIC CUSTOMS BROKERAGE CO. (No. 4450)[1]

¹ C. A. D. 256.

United States Court of Customs and Patent Appeals, November 1, 1943

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks* and *Arthur R.*  *Martoccia*, special attorneys, of counsel), for the United States.
*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellee.

[Oral argument October 7, 1943, by Mr. Weeks and Mr. Schwartz]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON,
Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

In this case the United States Customs Court, First Division, rendered judgment holding certain wooden sticks (referred to as "dimension stock"), sawn from birch material, classifiable under paragraph 1803 of the Tariff Act of 1930 and, therefore, not subject to any customs duty under that act, but further holding the merchandise to be subject to a tax at the rate of $1.50 per thousand feet, board measure, under section 601 (c) (6) of the Revenue Act of 1932, the rate so fixed being that named in two Canadian Reciprocal Trade Agreements, T. D. 48033 and T. D. 49752, respectively.

This appeal is by the Government and is limited to "so much of the judgment as decrees the merchandise free of duty."

There was no appeal by either the Government or the importer as to that part of the judgment holding the merchandise subject to the $1.50 tax under the revenue act. So, that holding is not in controversy here. For clarity, however, it is expedient to refer to it in reciting the history of the case.

The case embraces three protests (consolidated for trial) covering nine entries. Two of the entries were made prior to January 1, 1939, the remainder subsequently thereto.

The particular merchandise at issue in all the entries was classified by the collector under paragraph 406 which, as enacted in the Tariff Act of 1930, reads:

PAR. 406. Hubs for wheels, heading bolts, stave bolts, last blocks, wagon blocks, oar blocks, heading blocks, and all like blocks or sticks, roughhewn, or rough shaped, sawed or bored, 10 per centum ad valorem.

The customs duty was assessed and collected on the merchandise covered by the first two entries at the rate of 10 per centum ad valorem. On that covered by the other seven entries the customs duty was assessed and collected at the rate of only 5 per centum ad valorem because of the modification in customs duty rate provided in the second Canadian Trade Agreement. The Revenue Act of 1932 apparently made no provision for the assessment of a tax upon articles classifiable under paragraph 406 of the Tariff Act of 1930, *supra*.

In its protests as originally filed, the importer claimed the merchandise to be classifiable under paragraph 1803 of the act which so far as here pertinent reads:

PAR. 1803. Wood:

. * * *; sawed lumber and timber, not further manufactured than planed, and tongued and grooved; all the foregoing not specially provided for * * *. [free of customs duties.]

It was in effect conceded in the protests as originally filed that the merchandise was subject to the tax of $1.50 per thousand feet, board measure, under the revenue act, but subsequently each protest was amended to make the claim of classification under paragraph 1806 of the tariff act, which reads:

PAR. 1806. Woods: Sticks of partridge, hair wood, pimento, orange, myrtle, bamboo, rattan, india malacca joints, and other woods not specially provided for, in the rough, or not further advanced than cut into lengths suitable for sticks for umbrellas, parasols, sunshades, whips, fishing rods, or walking canes.

Had the claim made in the amendments been sustained, it would have resulted in admitting the merchandise free of both customs duties and taxes under the revenue act, since the latter act makes no provision for a tax upon articles classifiable under paragraph 1806, *supra*, a paragraph of the free list, but it was not sustained. The decision of the trial court in this case does not, in fact, make specific reference to the claims under paragraph 1806, but the record in a previous case styled *Pacific Customs Brokerage Co.* v. *United States*, 5 Cust. Ct. 146, C. D. 387, was made part of the record in the instant case, counsel for the respective parties agreeing during the trial that "the merchandise and issues [involved in the prior case] are the same in all material respects in the cases now on trial as in C. D. 387."

The decision in the prior case (C. D. 387) specifically held that the merchandise was not classifiable under paragraph 1806, and the importer took no appeal. The same holding is, of course, implicit in the instant case and, since the importer did not cross-appeal, that portion of the judgment is not before us for consideration.

Notwithstanding this, the brief on behalf of appellee before us (while conceding that importer may not obtain here a judgment more favorable than that rendered below), in effect, requests, or at least impliedly suggests, that we express our views respecting the applicability of paragraph 1806, *supra*. We, of course, are not at liberty to render any binding judgment on that phase of the case, but, in view of the contentions made in the briefs of both parties, we may say, that upon the record presented, we find no reason for disagreeing with the conclusion of the trial court concerning it.

In addition to the incorporated record alluded to additional evidence was taken by both parties in the instant case. In its decision the trial court reviewed the testimony fully and fairly and it is unnecessary

for us to discuss it in detail. The issue we are called upon to determine is comparatively simple.

It is established by the testimony that the sticks, or pieces, of wood composing the merchandise are made from slabs sawed from birch logs in the process of shaping the logs for the manufacture of lumber. By reason of the irregularity in the dimensions of such logs the slabs sawed therefrom differ in dimension, and the dimensions of the pieces sawed from the slabs obviously depend upon the dimensions of the slab from which made. As stated by the trial court in its decision in C. D. 387 (a part of the record here), "The merchandise in question if of various dimensions from 1″ x 2⅜″ x 38″ to 1″ x 1″ x 14″."

A sample in evidence (agreed by counsel for the respective parties to be fairly representative of the merchandise in its imported condition) is a piece of sawn wood approximately one inch square and fourteen inches long. No process had been applied to it before importation which advanced it beyond what may be described as the rough-sawed stage.

It is in as crude a state as any piece of wood sawed to dimension could possibly be.

It seems clear to us that paragraph 406, *supra*, was intended to cover only wooden articles either completely finished, or so advanced from the rough material that one can tell from the shape that it has been dedicated to the making of a finished article of the character therein named. The imported merchandise does not, as we view it, meet either of those tests.

That it is not a finished article is obvious from the description of it heretofore given. It is equally obvious that it is not shaped so that it is dedicated to making any of the articles named in the paragraph.

To be specific, it is not shaped to a form which dedicated it to the making of "Hubs for wheels, heading bolts, stave bolts, last blocks, wagon blocks, oar blocks, [or] heading blocks," nor to the making of any articles similar in character to any one of those named in paragraph 406, *supra*.

The testimony is to the effect that various types of wooden articles (such as various kinds of brush handles, putty knife handles, vegetable knife handles, broom handles, etc., toys or toy parts, and parts of furniture) are manufactured from the merchandise after its importation. As imported it was not dedicated to the making of anything mentioned in paragraph 406, *supra*, nor was it dedicated to the making of any specific article or class of articles elsewhere named in the act.

We think the merchandise falls squarely within the classification given it by the trial court, and the judgment appealed from is *affirmed*.